*Court of Common Pleas, Dauphin County, June 23d, 1868.*

FITTING *v.* GLASSBRUNNER.

School directors have no authority to levy a tax for the purchase of school-books to be used in the public schools of the district.

BY THE COURT.—This case presents a single question. Can the school directors levy a tax for the purchase of school-books to be used in the common schools of the district?

There is no power to assess and collect taxes in Pennsylvania unless conferred by act of Assembly; and the subjects of taxation, and the objects for which it is to be imposed, are generally designated in the statute. The legislature has, from time to time, carefully defined the powers and duties of the school boards, and if the purchase of school-books is a part thereof—if the directors are authorized to procure them for the use of the common schools, they must possess the power to pay for them out of the common fund. If they have no power to buy, they cannot levy a tax to pay for an unauthorized purchase.

The school directors are required to establish a sufficient number of schools within their districts to educate all of the children therein, between certain ages, who shall apply for admission. To effect this, they are authorized to rent or build a sufficient number of suitable school-houses, to purchase or rent ground for that

purpose, to levy a tax not exceeding a certain percentage on the county and State assessments for the erection of houses, to borrow money at not exceeding a certain percentage on the valuation of property for such purposes, to determine the amount of taxes required to keep up the common schools within the year, and to levy a tax to effect the same, not exceeding the amount of State and county taxes authorized by law. To purchase all the necessary furniture and fixtures for the schools, and to supply proper fuel. They are also to select and employ suitable teachers, direct what branches of learning shall be taught, what books shall be used, and decide upon a series of school-books in the different branches to be taught during the coming school year. But no member of the board, or other person connected with the common schools, can be interested in the furnishing of books, stationery, or other supplies for the school, or receive any compensation to promote their sale.

Under the power to provide the "*proper conveniences*" for the school-houses, the board has full authority to procure not only the proper seats, desks, stoves, and other apparatus to make the scholars and teachers comfortable, but also those articles used by all, and necessary for public instruction; such as blackboards, maps, charts, globes, a large dictionary, etc., intended for the benefit of the whole school. But can the directors obtain the school-books and stationery for the use of the scholars, and assess and collect taxes from the property of the district to pay for them, or make payment out of the school fund? That they can levy no tax for this special purpose is very clear, as the objects for which the same may be laid are carefully specified, with the highest amount for each object. It is said in the directions furnished by the State superintendent at No. 227, in enumerating the purposes of expenditure, after correctly stating them generally, and "books for indigent children." We can find no warrant in any act of Assembly now in force to sustain this item. Under the law as it stood prior to the introduction of the general school system, the commissioners of the county were required to pay for the education of indigent children, including the necessary books and stationery for their use, out of the public treasury, but that law has been long since supplied, and, if not in terms, is repealed by implication. But even if in force, it must be followed, the requisite proof laid before the county commissioners, and the county at large, not the school district, pay the expense. Possibly the item may be sanctioned by some statute, but if so, it has escaped our observation. The tax now brought in question is not levied for the benefit of the *indigent*, but to procure books of a certain description for all the scholars of the district. It would seem to be a separate tax to purchase books. There is certainly no express power of that character conferred on the school board, nor

can it exist by implication. It might be sufficient for this court to determine that there is no authority either to levy a tax for the separate purpose of purchasing books, or to pay for them out of the funds lawfully raised for the support of the schools, without looking to the question of expediency. It may perhaps be safely conceded that, in construing a system of laws, public expediency or great inconvenience may be considered in their interpretation, so as to avoid the one, and promote the other. But in conferring the power on the school directors to purchase all of the books required in the district, we overburden the system, already complained of as the highest and most onerous tax paid by the people. Sound policy requires that this tax shall not be increased.

Parents should feel some portion of the weight of educating their own children, and can generally, with very little exertion, obtain the necessary school-books. If the books themselves are public property, they will be more carelessly used, and less cared for, than where each child owns those purchased by its parent. Besides, if the board can buy books, it may stationery also, which would lead to a general system of waste and extravagance. Taxation for the support of common schools is already more onerous in this State than for any other object; in many districts is equal to or greater than all other taxes; and every new subject for taxation should be carefully avoided, lest we break down the whole system. At this time a tax for the support of schools and building school-houses may amount to twenty-six mills on the dollar, equal to one-half the rental ordinarily obtained for agricultural property. If that is to be increased, the power so to do should be conferred by clear legislative enactment, which we deem highly inexpedient. The fact that county commissioners were authorized to purchase books for the indigent has been used as an argument to show that school directors possess the same power; but in our opinion a contrary inference should be drawn from that enactment. It shows that when the legislature designed to authorize such purchase, it was done in express words. The school board does not pretend to confine its action to the " *indigent,*" but to buy all of the books used in the schools.

It must be borne in mind that not more than one-half of the people have the benefit of these expenditures. At least one-fourth of the taxpayers have no children to educate, and another fourth do it invariably at their own expense. There is not much justice in heavily taxing one-half the community for the sole benefit of the other half. We have already said that no power is conferred on the directors to purchase books for the use of the schools, and this idea is strengthened by the provisions to buy for a school library, which is expressly conferred where the funds are voluntarily raised, but in no event is any of the public money to be expended. The directors are only used as instruments for selec-

tion and purchase. We are clearly of the opinion that the purchase of books for public use as set forth in the stated case, was illegal. The tax assessed to pay therefor is unauthorized, and cannot be collected.

Therefore, judgment is entered against the defendant for $13 and the costs, as per the agreement in this case submitted. Where the tax has been paid voluntarily, it cannot be recovered back.

*Simonton, for plaintiff.*

*Lamberton and Mumma, for defendant.*